**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

DAVID GREGORY PRINE,
  *Defendant-Appellant.*

No. 01-4094

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-00-164)

Submitted: May 31, 2001

Decided: July 20, 2001

Before MOTZ, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

### COUNSEL

Louis C. Allen, III, Federal Public Defender, Eric D. Placke, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Benjamin H. White, Jr., United States Attorney, L. Patrick Auld, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

David Gregory Prine pled guilty to possessing and uttering a forged security (a check from an insurance company on which his wife's signature had been forged)[1] in violation of 18 U.S.C. § 513(a) (1994) (Count One), and bank fraud, 18 U.S.C. § 1344 (1994) (Count Two). He was sentenced to twenty-two months imprisonment. Prine appeals his sentence, contending that the district court erred in departing upward pursuant to *U.S. Sentencing Guidelines Manual* § 5K2.9, p.s. (2000) (Criminal Purpose), on the ground that the bank fraud was committed to facilitate the commission of another offense. Prine has filed a motion to expedite his appeal. We affirm the sentence and deny the motion to expedite as moot.

In the spring of 1999, Prine separated from his wife. A June 1999 consent order gave both parents joint custody of their one-year-old son. In August, Prine failed to return his son after a weekend visit. He was arrested almost a year later in Texas, where he was living with his son and a girlfriend. On the two days before he failed to return his son as scheduled and on the day following, Prine deposited insufficient funds checks from several of his bank accounts into his Centura Bank personal checking account, withdrew money in a number of transactions at different branch banks, and disappeared with the proceeds. Centura Bank sustained a loss of $44,579.21. During the time he lived in Texas, Prine was not employed and he used the proceeds of the bank fraud for living expenses.

After Prine's guilty plea, the probation officer calculated Prine's offense level at 11, which included a two-level adjustment for accep-

---

[1]In May 1999, Prine deposited a check from his insurance company in payment of a claim for fire damage to his home without telling his estranged wife, although her purported endorsement was on the check.

tance of responsibility. The government made no objections to the presentence report, but requested an upward departure for criminal purpose pursuant to USSG § 5K2.9, arguing that Prine had committed the bank fraud to facilitate the abduction of his son.[2] The government suggested that a departure should be guided by USSG § 2A4.1 (Kidnapping/Abduction).

Prine opposed any departure. He argued that the term "facilitate" should be narrowly construed, and that, even if the court should find that an abduction occurred, the bank fraud did not facilitate the abduction. He also argued that, if the court decided to depart, it should look to USSG § 2J1.2 (Obstruction of Justice) for guidance in structuring the departure. The government introduced into evidence letters Prine wrote after his arrest to an acquaintance at the company where he worked before the abduction. In the letters, Prine stated that, "[y]ou convinced me to take Jake and leave . . . . [Y]ou came up with the idea that I leave with Jake and you come with me . . . . [Y]ou helped me figure out how much money I needed and how to come up with it." The district court found that the letters indicated that Prine planned the abduction, that the bank fraud was committed as part of his plan, and that, but for the bank fraud, he could not have undertaken the abduction.

To structure the departure, the district court accepted Prine's suggestion to look to § 2J1.2. The court began with the base offense level of 12 provided under § 2J1.2, a level close to the offense level of 11 recommended by the probation officer. The court decided that a further enhancement of two levels was appropriate, analogous to an enhancement under § 2J1.2(b)(2), because Prine's wife was kept ignorant of her infant son's whereabouts or condition for almost a year. Under § 2J1.2(b)(2), a three-level increase is made if the offense "resulted in a substantial interference with the administration of justice." The district court limited the departure to the equivalent of a two-level increase because Prine had taken good care of his son while he was in Texas. The resulting guideline range was 18-24 months. The court imposed a sentence of twenty-two months, to run concurrently with any sentence Prine might receive in state court.

---

[2]A state charge of felony child abduction was pending when Prine was sentenced for the instant offenses.

Prine contends on appeal that the district court erred in departing upward and in structuring the departure. A sentencing court may depart in reliance on a factor that is an encouraged basis for departure under the guidelines, unless the factor is taken into account in the applicable guideline. *Koon v. United States*, 518 U.S. 81, 94 (1996); *United States v. Brock*, 108 F.3d 31, 34 (4th Cir. 1997). In this case, the guideline applicable to bank fraud, § 2F1.1, does not take into account that the bank fraud might be committed to "facilitate . . . the commission of another offense," the factor targeted in § 5K2.9. Therefore, the district court's decision to depart under § 5K2.9 may be affirmed, providing that its factual determination that Prine's bank fraud was intended to facilitate the abduction of his son is not clearly erroneous. *United States v. Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996).

Prine points out that he was employed in June and July of 1999 (just before the abduction and bank fraud), that he had over $8000 in one of his bank accounts, and that he had a monthly military pension of $355. Because the funds he gained from the bank fraud were not absolutely necessary for the abduction, Prine contends that the funds did not facilitate the abduction. However, in light of Prine's statements in the post-arrest letters, the evidence that he committed the bank fraud in conjunction with the abduction and used the proceeds for living expenses while he kept his son in Texas, we cannot say that the district court clearly erred in finding that the bank fraud facilitated the abduction. Therefore, the court did not abuse its discretion in determining that a departure was justified under § 5K2.9.

Prine also contests the extent of the three-level departure. The extent of a departure must be reasonable under the circumstances. 18 U.S.C. § 3742(f)(2) (1994). The district court may decide how far to depart by looking "to the treatment of analogous conduct" in other guideline sections. *United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998).

Prine argues that the court failed to make any specific findings detailing how his conduct substantially disrupted the administration of justice.[3] As the government notes, the district court was not actually

---

[3]The government suggests that this argument should be reviewed for plain error because Prine did not contest the extent of the departure on this ground in the district court. However, Prine opposed any departure, thus preserving the entire issue for appeal purposes.

applying § 2J1.2, but was merely using it as a guide in determining the size of the departure, and so was not required to make such findings. We note, however, that one of the factors included in the commentary to § 2J1.2 as demonstrating "substantial interference with the administration of justice" is "unnecessary expenditure of substantial government or court resources." Prine's failure to abide by the terms of the June 23, 1999, consent order, which the district court noted in its decision to depart, and his disappearance with his son, necessitated an investigation that clearly required an unusual expenditure of court and government resources. In these circumstances, we find that the extent of the departure was reasonable.

Prine also argues that the district court erred by failing to make a finding concerning acceptance of responsibility and not reducing the extent of the departure to account for his acceptance of responsibility. This argument is based on a misunderstanding of the nature of a departure. The probation officer's original calculation of Prine's offense level included a two-level reduction for acceptance of responsibility. The government did not object, and the district court adopted the recommendations set out in the presentence report. In this circumstance, the district court was not required to make findings because there were no unresolved objections relating to the sentence calculation. *See* Fed. R. Crim. P. 32(c)(1) (district court must rule on unresolved objections). Then, as provided in the guidelines, the district court considered whether it should depart upward from the established guideline range, as requested by the government, and ultimately departed. At that point, acceptance of responsibility was no longer an issue. Prine was not entitled to another reduction for acceptance of responsibility from the offense level as established by the court's departure.

We therefore affirm the sentence. Prine's motion to expedite is denied as moot. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*